IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAMLET GARCIA II,         | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No. 2:25-cv-00440-JDW |
| | : | |
| ANGELICA M. CRUZ, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

Hamlet Garcia filed this *pro se* action asserting federal antitrust and state law claims against Angelica Cruz and Lady Tint LLC. He seeks leave to proceed *in forma pauperis* and has filed a litany of motions, some of which he captions "emergencies." But Complaint does not state a plausible antitrust claim. Instead, it demonstrates that he has tried to make a federal case out of a local business dispute. I will dismiss his Complaint and deny his various motions as moot. Because I will dismiss his federal claims, I will decline to exercise jurisdiction over his state law claims and permit him to pursue them in state court, if he elects to do so.

**I.     BACKGROUND**

Ms. Cruz owns Lady Tint, which provides car window tinting services. Mr. Garcia began to collaborate with Ms. Cruz and Lady Tint in February 2021. Despite her "positive statements," Ms. Cruz disparaged his role in her business as irrelevant and insignificant even though his "trade secrets were deemed essential to Lady Tint's operational continuity and success." (ECF No. 2 at 13.) Ms. Cruz claimed she was the one who carried

the operation forward because she tinted the cars. Mr. Garcia's efforts caused Lady Tint to have "rapid expansion and operational supremacy" in the window tint business and garner over 100 positive customer reviews on Google, driving revenue growth and customer acquisition. (*Id.*) Apparently, he set up ad strategies, streamlined production and reduced labor costs, provided legal assistance, security, and site management, "handled preparatory work," and secured a key worker. (*Id.* at 15.)

Mr. Garcia also alleges his crucial contributions in digital infrastructure and brand visibility aided Lady Tint's market position. Ms. Cruz retained this advantage without compensating him and "disproportionately benefit[ed] from market leadership … while exploiting [his] proprietary business assets." (*Id.* at 16-17.) His contributions included "optimization of local search visibility on platforms like Google Maps." (*Id.* at 17.) Beginning in the summer of 2021, Ms. Cruz appropriated his "proprietary business methodologies and strategies without prior consent or authorization." (*Id.* at 18.) Historically, Lady Tint relied on word-of-mouth referrals, but Mr. Garcia's "strategic marketing initiatives" allowed the business to experience significant growth. (*Id.* at 20.) He claims that by "unlawfully adopting [his] methodologies, [Ms. Cruz] distorted the local market, securing an unfair edge that would not have been attainable absent [his] intellectual contributions." (*Id.*)

On January 5, 2022, Mr. Garcia sent Ms. Cruz a cease and desist letter that she disregarded. In March 2022, when he "initiated an investigation into the emerging

improprieties" at Lady Tint, Mr. Garcia "uncovered a complex conspiracy orchestrated by Angelica Cruz." (*Id.* at 26.) It included "exploitation of internal knowledge, control over sensitive information (such as customer lists), and attempts to cover their tracks." (*Id.* at 27.) Ms. Cruz allegedly gained access or attempted to gain access to Mr. Garcia's computer systems, network, and data without consent. She used Mr. Garcia's business-related debit card for her personal use. She authorized withdrawals for employees and contractors for work never performed causing Mr. Garcia to face difficulties meeting payroll for her company. Acting on behalf of Lady Tint, Ms. Cruz authorized payments to a New York supplier of vinyl film and authorized commission payments for bonuses or overtime that were not reflected in the payroll and "were directly covered by [Mr. Garcia's] personal funds." (*Id.* at 30.) She hired her mother as an agent for Lady Tint, but her mother did no work. A piece of equipment called a Graphtec Cutter was delivered to the business, but Ms. Cruz did not enter it into inventory, nor did Lady Tint pay for it, and Mr. Garcia claims that Ms. Cruz diverted it to her personal use.

At some point, Mr. Garcia started his own tinting business, entering into supply contracts for materials. He resigned from Lady Tint in the fall of 2023. But Ms. Cruz "continued to unlawfully retain [his] proprietary interests, attempting to unjustly enrich herself by million(s) of dollars in ill-gotten gains derived from [his] intellectual property,

3

trade secrets, and business contributions."[1] (*Id.*) According to Mr. Garcia, Ms. Cruz retained "substantial financial and operational benefits [she] derived from [Mr. Garcia's] labor, expertise, and strategic contributions" to Lady Tint.

Based on these allegations, Mr. Garcia asserts a conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, as actionable under the Clayton Act, as well as state law claims for misappropriation of intellectual property, unjust enrichment, breach of contract, breach of an implied covenant of good faith and fair dealing, *quantum meruit*, violation of the Pennsylvania Corrupt Organizations Act, common law fraud, breach of fiduciary duty, conversion, civil conspiracy, and "harm through criminal acts" under Pennsylvania law. Mr. Garcia seeks money damages.

Since he filed the Complaint in this case, Mr. Garcia has filed the Motions: "Motion for Immediate Waiver Recognition & Constitutional Entry" (ECF No. 17); "Motion to Compel Enforce Clerk's Statutory Duties" (ECF No. 20); Motion for Reconsideration of the Court's prior Order denying his recusal motion (ECF No. 21); and an "Emergency Motion To Expedite the Proceedings" (ECF No. 23).

---

[1] Although he mentions "intellectual property" and "proprietary methodologies" in his Complaint, Mr. Garcia does not allege he is the owner of any federally protected trademarks, copyrights, or patents and he has not stated any plausible infringement claims.

## II.   STANDARD OF REVIEW

A plaintiff who seeks leave to proceed *in forma pauperis* must submit an affidavit demonstrating his inability to pay the required fees and costs. *See* 28 U.S.C. § 1915(a)(1). If he makes that showing then, 28 U.S.C. § 1915(e)(2)(B) requires the judge to screen the complaint to see if it states a plausible claim. When a judge screens a complaint, he must determine whether it states a plausible claim. That inquiry applies the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). I must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). That means I must accept the factual allegations in the Complaint as true, draw inferences in favor of the plaintiff, and determine whether there is a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. When a plaintiff is proceeding *pro se*,, I construe his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III.   DISCUSSION

### A.   *In Forma Pauperis*

Mr. Garcia has submitted the required form in which he attests under penalty of perjury that he has no income or assets. I will therefore grant him leave to proceed *in forma pauperis*.

5

### B. Plausibility Of Claims

#### 1. Antitrust

Section 1 of the Sherman Act prohibits "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. The "very essence" of a Section 1 claim is "the existence of an agreement." *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 999 (3d Cir. 1994). A single person's or entity's unilateral activity will not suffice. *See Fisher v. Berkeley*, 475 U.S. 260, 266 (1986). A Section 1 plaintiff "must plead the facts constituting the conspiracy, its object and accomplishment." *Black & Yates v. Mahogany Ass'n*, 129 F.2d 227, 231 (3d Cir. 1941). An "allegation of unspecified contracts with unnamed other entities to achieve unidentified anticompetitive effects does not meet the minimum standards for pleading a conspiracy in violation of the Sherman Act." *Garshman v. Universal Res. Holding Inc.*, 824 F.2d 223, 230 (3d Cir. 1987).

Mr. Garcia's allegations of concerted activity are not plausible. He has done little more than insert the word "conspiracy" into his Complaint, alleging only that Ms. Cruz engaged in a "complex conspiracy." (ECF No. 2 at 26.) He fails to name any entity other than Lady Tint, or other Lady Tint employees, with whom Ms. Cruz conspired or facts from which I could infer the existence of a conspiracy with another entity. To the extent he asserts that Ms. Cruz conspired with Lady Tint, that allegation is not plausible because the "intracorporate conspiracy doctrine" bars conspiracy claims involving only

6

agents and their principals. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984). Mr. Garcia also fails to "assert facts from which a conspiratorial agreement can be inferred" involving some other person or entity. *Great W. Mining & Mineral Co. v. Fox Rothchild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).

Not only has Mr. Garcia failed to plead concerted action, but he also fails to plead a plausible restraint of trade. Although the language of Section 1 of the Sherman Act could encompass a broad array of activity, the Supreme Court has limited its application to agreements which unreasonably restrain trade. *See Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 66 (1911). This principle has come to be known as the "rule of reason." *See National Soc. of Pro. Eng'rs v. United States*, 435 U.S. 679, 690 (1978). In order to plead a claim that a defendant's practices violate the rule of reason under Section 1 of the Sherman Act, a plaintiff must allege four elements: (a) that the defendants contracted, combined or conspired among each other; (b) that the combination or conspiracy produced adverse, anti-competitive effects within the relevant product and geographic markets; (c) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (d) that the plaintiff was injured as a proximate result of that conspiracy. *See Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 464-65 (3d Cir. 1998). Mr. Garcia does not allege a restraint of trade. He never alleges how someone restrained trade or how the market in which he and Ms. Cruz do business has become less competitive due to the improper action. To do so, a plaintiff

7

must allege a restraint of trade with actual competitive harm or diminution of competition in a relevant market. See *Eichorn v. AT & T Corp.*, 248 F.3d 131, 147-48 (3d Cir. 2001). Mr. Garcia alleges no details of actual harm to competition and describes only his and Ms. Cruz's own business, which cannot itself be a relevant market for antitrust purposes. See *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 728 (3d Cir. 1991) In other words, Mr. Garcia has not alleged any facts about a relevant product and geographic market other than his vague and conclusory allegation that by "unlawfully adopting [his] methodologies, [Ms. Cruz] distorted the local market." (ECF No. 2 at 20.)

Mr. Garcia's Complaint makes clear that his dispute with Ms. Cruz is a local one. It does not affect a market or involve a restraint of trade. It might involve contracts, fiduciary duties, or unfair trade practices. But none of that could rise to an antitrust violation, and there does not appear to be a way for Mr. Garcia to cure that flaw with an amended pleading. I will therefore dismiss his antitrust claims with prejudice.

### 2. State law claims

Mr. Garcia asserts claims under state law. Because I am dismissing all of Mr. Garcia's claims under federal law, I will not exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367(c). There's also no independent basis for jurisdiction. 28 U.S.C. § 1332(a) grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States." Section 1332(a) requires "complete

diversity between all plaintiffs and all defendants." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quote omitted). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Mr. Garcia alleges that he is a "man for the Commonwealth of Pennsylvania" (ECF No. 2 at 11), and provides a street address in Philadelphia, which I understand to assert that he is a citizen of Pennsylvania. He asserts that Ms. Cruz is a resident of Pennsylvania." (*Id.*) Mr. Garcia therefore has not alleged that the parties are diverse, so the Court has no independent basis to assert jurisdiction over Mr. Garcia's claims.

### IV.   CONCLUSION

I will dismiss Mr. Garcia's federal antitrust claims with prejudice and his remaining state law claims without prejudice for lack of jurisdiction. An appropriate Order follows.

BY THE COURT:

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

March 28, 2025